RUDOLPH NICOLAUS V. CARL SYNDER.

FILED NOVEMBER 3, 1898.   No. 8362.

Action by Minor for Wages: EVIDENCE. The evidence adduced by plaintiff to establish his rights to maintain an action for wages earned by him during his minority examined, and *held* insufficient for that purpose.

ERROR from the district court of Seward county. Tried below before BATES, J. *Affirmed.*

*Norval Bros., G. W. Lowley,* and *D. C. McKillip,* for plaintiff in error.

*Edw. C. Biggs* and *J. J. Thomas, contra.*

RYAN, C.

Rudolph Nicolaus, after he had attained his majority, sued Carl Synder before a justice of the peace of Seward county for a balance of $55.95, as wages for services rendered between March 1 and August 17 of the year 1890. We are not advised what judgment was rendered by the justice of the peace, for the record before us deals alone with the trial in the district court of said county, wherein there was a verdict and judgment in favor of Synder, the

defendant. From the averments and admissions contained in the pleadings we are able to state confidently that at the time he rendered the services, for the value of which he brought this suit, plaintiff was a minor; that he rendered the services; and that they were of the value claimed. The affirmative defense of payment pleaded by defendant was that plaintiff, when he rendered the services, was a minor, who resided with his mother, Mrs. Mox Byling, and Mox Byling, his step-father, who then had the control and management of plaintiff, and that plaintiff was unable to enter into the contract relation. In the reply it was alleged that plaintiff, before he rendered services for the defendant, had been emancipated by his mother, and that, therefore, the alleged payment was not effective to deprive him of his right of recovery. We do not think it necessary to enter into a detailed discussion of the issues thus presented, for there was no evidence from which an emancipation might properly be inferred. There was evidence from which it is claimed the jury might have concluded that plaintiff was specially authorized by his mother to collect wages for these particular services, and perhaps some others named, but there was no general emancipation, as will be illustrated by the testimony which hereinafter we shall quote. The question presented by the proofs on this point was narrowed down to the claim that there was special leave given plaintiff, who was then in his eighteenth year, to hire himself to the defendant and from him to collect his wages. The step-father is not shown to have done otherwise than to acquiesce in this arrangement, and whether the evidence warranted a finding of the existence of such authority was a question of fact to be determined by the jury, provided there was evidence from which different persons might draw different conclusions, and to this proposition we shall now direct our attention. On this point the testimony of plaintiff was as follows:

Q. State what the facts were about your working for Synder; under what right you had to go to work.

Nicolaus v. Synder.

A. I was there for my own self and hired out.  ·

Q. You may state what your mother said about your working out.

A. She didn't say nothing at all.   *   *   *

Q. Who made the bargain; anybody else make it?

A. No, just me and Carl Synder.

Q. You may state whether you got the consent of anybody to make that.

A. Yes, sir; my mother gave me consent.

Q. Who was to collect the wages and have them?

A. Carl Synder says he will pay the money to me.

Q. Who was to have the wages after collected?

A. Myself.

Q. They belonged to you?

A. Yes, sir.

This testimony was followed by statements that defendant gave plaintiff as part of his wages $10 at one time, $5 at another, $2.50 at another, and $2.50 at still another time.

On his cross-examination the witness testified as follows:

Q. Didn't your mother tell you to go there and herd cattle?

A. That is what I don't know.   *   *   *

Q. I will ask you where you lived?

A. Now?

Q. Where you made your home while you was a minor?

A. While I was at home I was over at Tamora with my mother; when I was working out I lived where I was working.

Q. At the time of this agreement with Synder where did you live—with your mother and step-father?

A. I was staying over there a couple of days. I wasn't at home all of the time.

Q. You claim that as your home, don't you?

A. Yes, sir.

On re-examination this witness was asked what the $10 of his wages he had received from Synder by plain-

tiff paid to his mother, was for, to which he answered:
"I gave it to my mother. I gave it to her, that is all I
know."

With reference to the proposition under consideration
the testimony of Mrs. Byling was as follows:

Q. You may state if you know about your son working
for Carl Synder in 1890.

A. Yes, sir; I know.

Q. You may state what you had to do, if anything,
about his working for Synder at that time.

A. I know nothing. He came over and hired himself
to make wages for himself.

Q. Did you give him permission?

A. No. He came home afterwards and was to go to
work for Mr. Synder herding cattle.

Q. What did you tell him?

A. I say nothing more than all right, you go to work.

Q. What did you say about his collecting his wages;
who should collect them?

A. I say he can do what he like. He can keep the
money.

Q. That was before he had worked or while he was at
work there. When did you tell him that he could keep
the money?

A. He came home and say he could hire there, and I
say that he could keep the money himself.

Q. Did you tell him any different, that he could not
keep the money after that?

A. No.

On cross-examination Mrs. Byling was asked and an-
swered as follows:

Q. You may state when it was that you told Rudolph
that he could have the money that he had earned at Mr.
Synder's.

A. I cannot remember when I told him that he could
have the money; from that time I said that is your money.
I don't want any money now from him only just when I
need it awful bad.

Q. You didn't get any from him?

A. No.

Q. Was this conversation with Rudolph that you have just testified to before or after he started to work for Mr. Synder?

A. Not before he started to work by Mr. Synder; I know nothing about that.

Q. Then it was after he began working for Mr. Synder, after he had done the work, that you told him he could have the wages, was it?

A. I cannot remember when it was that I told him he can have the wages.

Q. Well, you remember of telling him that he could have this wages?

A. I don't remember.

Q. Don't remember of telling him that?

A. No.

Q. Then you are not positive that you told him?

A. No. I told him nothing.

While plaintiff at the time of bringing this action had attained his majority, it is evident that his right to collect for his own use the wages he earned while a minor is no greater than it would have been if suit had been brought in his behalf before he reached the age of twenty-one years. Let us now suppose that while he was still a minor a suit had been brought for these wages in his behalf, would the above evidence sustain a recovery against the employer, to whom no knowledge of any special authority had been brought home? The fact that the minor in his eighteenth year made the bargain would not necessarily be of controlling weight against the employer, for a youth of that age is not to be presumed incapable of arranging for the rendition of services, but the implication of the law is that such an arrangement is for the benefit of the parent with whom he makes his home, and under whose management he is. According to the testimony of both mother and son the hiring to Synder was approved by the mother in advance. The son

was authorized to receive the pay, and one-half of what he received he testified he turned over to his mother, but for what reason he could not explain. One-half of what was paid to him, aside from the above $10 plaintiff testified he laid out in purchasing clothing for himself. Even in regard to the money he was told he could collect the mother testified that she told her son she did not want any money from him only just when she needed it "awful bad." Under these circumstances we think a suit could not have been maintained against Synder in behalf of the minor on the showing made in this case. For the reason that plaintiff failed upon the testimony adduced by himself to show that he was entitled to maintain an action against Synder for wages earned during minority the judgment of the district court is

AFFIRMED.